IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NORTH AMERICAN MEDICAL CORPORATION,<br><br>    Plaintiff,<br><br>        v.<br><br>AXIOM WORLDWIDE, INC., et al.,<br><br>    Defendants. | CIVIL CASE NO.<br>1:06-CV-1678-JTC |

**O R D E R**

Pending before the Court is the Motion to Dismiss [# 459] filed by Defendant Dr. Timothy Exarhos. Plaintiff brought this action in 2006 against Axiom Worldwide, Inc. ("Axiom") and others, asserting numerous claims, including Trademark, Copyright, Trade Dress Infringement, and False Marketing and Advertising. Subsequently, Plaintiff filed an Amended Complaint adding Dr. Exarhos as a defendant and asserting a False Advertising claim under the Lanham Act and three related state law claims against him. Each of these claims is based on Dr. Exarhos's alleged involvement in a series of medical articles and advertisements claiming that the DRX 9000, the medical device at the center of this legal dispute, is 86% effective; a claim which Plaintiff contends is false or misleading.

In response to the Amended Complaint, Dr. Exarhos moved to dismiss the claims asserted against him for lack of personal jurisdiction. On March 11, 2009, the Court held an evidentiary hearing on the issue of personal jurisdiction. Based on the evidence submitted by the parties, including the testimony of Dr. Exarhos, the Court finds that Plaintiff failed to satisfy its burden of demonstrating that the Court's exercise of personal jurisdiction over Dr. Exarhos comports with Georgia's long arm statute and the Due Process Clause of the United States Constitution. Accordingly, the Court **GRANTS** Dr. Exarhos's motion to dismiss [# 459].

## I.     Factual Background

### A.    Dr. Exarhos's involvement with the medical study

Dr. Exarhos is the brother of Defendant Nicholas Exarhos and an internal medicine physician specializing in the treatment of back injuries. (T. Exarhos Decl. ¶¶ 2, 4, Nov. 11, 2008.) He owns a medical practice in Florida, where he has lived and practiced since 1995. (Id. ¶¶ 3, 4.)

Over the course of several months in 2001, Dr. Exarhos treated approximately 219 patients on three prototype DRX 9000 machines provided by Axiom. (Gibson Decl. ¶ 9. Mar. 6, 2009; T. Exarhos Dep. 8:10-11:3, Feb. 27, 2009; O'Hare Decl. ¶¶ 5-9, Mar. 4, 2009; Badger Decl. ¶¶ 6-11, Mar. ___, 2009.) At the request of his brother, Dr. Exarhos compiled the post treatment

outcomes for these patients. (Id. ¶ 23; T. Exarhos Dep. 10:3-11:3.) Dr. Exarhos completed treating these patients in September 2001 and provided the treatment outcomes to Axiom. (T. Exarhos Decl. ¶ 23; Gibson Decl. ¶ 7.) The documents Dr. Exarhos provided Axiom included a synopsis cover sheet, the patient's MRI report, and a pain questionnaire where the patient rated his or her level of pain. (T. Exarhos Dep. 25:1-17.) At the time, Dr. Exarhos knew that Axiom would use the patient data to demonstrate the efficacy of the DRX 9000. (T. Exarhos Dep. 52:17-53:11).

Although Axiom did not compensate Dr. Exarhos for collecting the patient data, he was later giving the opportunity to train other doctors and their staff how to use the DRX 9000. (N. Exarhos Decl. ¶ 21, Mar. 6, 2009; Gibson Decl. ¶ 15.) Axiom also provided him a discount on three DRX 9000 machines, which he later purchased for his medical practice. (N. Exarhos Decl. ¶ 20.)

After providing the patient data to Axiom, Dr. Exarhos did not have any further involvement with how Axiom used the data. (T. Exarhos Decl. ¶ 24; Gibson Decl. ¶ 13; T. Exarhos Dep. 11:4-7, 12:5-13, 68:5-8; N. Exarhos Decl. ¶19.) Soon after Dr. Exarhos provided Axiom with the patient data, Axiom published an anonymous article on its website entitled "Clinical Outcomes for Spinal Decompression," which analyzed the treatment data

3

gathered by Dr. Exarhos. (Gibson Decl. ¶ 13; Pl's Hr'g Ex. 13.) In addition, Dr. Gionis submitted an article entitled "Advances in Biotechnology Improve Clinical Outcomes for Spinal Decompression" to the Journal of Musculoskeletal Pain for publication. (Groteke Decl. ¶ 6, Mar. 6, 2009.) This article concludes that the DRX 9000 relieved symptoms and restored mechanical function to 86% of patients previously thought to be surgical candidates. (Pl.'s Hr'g Ex. 14 at 8.) Finally, in 2003, the medical journal Orthopedic Technology Review published an article co-authored by Dr. Eric K. Groteke and Dr. Gionis entitled "Spinal Decompression," which made similar claims regarding the efficacy of the DRX 9000. (Groteke Decl. ¶ 5.) After the publication of these articles, Axiom advertised that the DRX 9000 had an 86% success rate. (Pl.'s Hr'g Ex. 8-12.)

Although each of these articles analyzed the same set of patient data collected by Dr. Exarhos, Dr. Exarhos was not involved in writing or editing these articles. (Id. ¶ 11; T. Exarhos Decl. ¶¶ 23-25; T. Exarhos Dep. 11:4-7, 12:9-17; N. Exarhos Decl. ¶ 19; Gibson Decl. ¶ 13.) Moreover, Dr. Exarhos did not analyze the data and arrive at the 86% figure. (T. Exarhos Dep. 66:6-18.) Finally, he did not make any of the marketing decisions regarding how Axiom would use this data. (T. Exarhos Decl. ¶ 25.)

4

### C. Dr. Exarhos's Georgia contacts

Dr. Exarhos's only contact with Georgia relate to a single business trip in 2003 when he traveled to Georgia to train a doctor how to use the DRX 9000 the doctor had recently purchased. (Smith Dep. 78:15-79:14, Jan. 30, 2007; T. Exarhos Decl. ¶ 10.) Dr. Exarhos was not involved in the marketing activities or sales of the DRX 9000 in Georgia. (T. Exarhos Dep. 13:14-21, Kowaleski Decl. ¶¶ 9-10, 14, Mar. 6, 2009; N. Exarhos Decl. ¶ 23; Gibson Decl. ¶ 17.) After this visit, Dr. Exarhos spoke by phone with the Georgia doctor's office when the office had a "troublesome case." (Smith Dep. 78:24-79:1.) Axiom paid Dr. Exarhos approximately $3,000 for this visit through his company, Palm Medical. (Id. 14:2-14, 34:15-17.) Aside from this trip to Georgia and one or two related telephone calls, Dr. Exarhos had no other contacts with Georgia. (T. Exarhos Decl. ¶¶ 2-20; T. Exarhos Dep. 49:4-7.)

## II. Analysis

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over Dr. Exarhos. Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, Oklahoma, 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002) (Martin, J.). Although a plaintiff typically need only make out a prima facie case of jurisdiction over the defendant, Cable/Home Commc'n, Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990); Morris v. SEE, Inc., 843 F.2d

489, 492 (11th Cir. 1988), where the district court exercises its discretion and holds an evidentiary hearing, plaintiff must prove jurisdiction by a preponderance of the evidence, see Welt Indus., Inc. v. Weingart, Inc., 660 F. Supp. 424, 425 (N.D. Ga. 1987) (Shoob, J.); Ball v. Metallurgie Hoboken-Overpelt, SA, 902 F.2d 194, 197 (2nd Cir. 1990), cert denied, 498 U.S. 854, 111 S. Ct. 150 (1990); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1289, 1285 (9th Cir. 1977); see also Chalwest (Holdings) Ltd. v. Ellis, 924 F.2d 1011, 1013-14 (11th Cir. 1991) (noting that prima facie standard applies when the district court does not hold an evidentiary hearing). Here, the Court held an evidentiary hearing on the jurisdictional issue. Therefore, Plaintiff bears the burden of establishing that the Court has personal jurisdiction over Dr. Exarhos by a preponderance of the evidence.

A federal district court in Geogia may exercise personal jurisdiction over a nonresident defendant where the exercise of jurisdiction satisfies Georgia's long-arm statute and the Due Process Clause of the United States Constitution. Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d 738, 746 (11th Cir. 2002); Paul, Hastings, 245 F. Supp. 2d at 1253. As the parties concede, the provisions of the Georgia long arm statute applicable to Dr. Exarhos confer personal jurisdiction over a non-resident defendant to the maximum extent permitted by constitutional due process. See McGow v. McCurry, 412

6

F.3d 1207, 1214 (11th Cir. 2005); Lowdon PTY Ltd. v. Westminster Ceramics, LLC, 534 F. Supp. 2d 1354, 1358 (N.D. Ga. 2008) (Shoob, J.); Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 354-55 (Ga. 2005) (internal quotation and citation omitted). Thus, the question for the Court is whether the exercise of personal jurisdiction over Dr. Exarhos, based on the facts in the record, comports with the requirements of the Due Process Clause.

### A. Constitutional Due Process

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a nonresident defendant have "minimum contacts" with the forum state and that the exercise of jurisdiction over the nonresident does not offend "traditional notions of fair play and substantial justice." Mutual Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312,1319 (11th Cir. 2004) (internal quotations and citation omitted); Madara v. Hall, 916 F.2d 1510, 1515-16 (11th Cir. 1990); S.E.C v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S. Ct. 559, 564 (1980) ("As has long been settled . . . court[s] may exercise personal jurisdiction over a nonresident defendant only so long as there exists 'minimal contacts' between the defendant and the forum."). Due process differs depending on whether jurisdiction over a person is

7

"general" or "specific." See generally Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 104 S. Ct. 1868 (1984). "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000); see also Nippon Credit, 291 F.3d at 747. In contrast, general jurisdiction arises when a party has "continuous and systematic" contacts with the forum that are unrelated to the litigation. Nippon Credit, 291 F.3d at 747. Because Plaintiff does not contend that the Court has general jurisdiction over Dr. Exarhos, and there is no evidence in the record that Dr. Exarhos had continuous and systematic contacts with Georgia, the Court need only address specific jurisdiction.

In order to establish specific jurisdiction over Dr. Exarhos, Plaintiff must satisfy three requirements:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

McGow, 412 F.3d at 1214; see also Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007); Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996); Mahmud v. Oberman, 508 F. Supp. 2d 1294, 1301 (N.D. Ga.

2007) (Duffey, J.). These "minimum contacts" insure that a nonresident defendant has "fair warning" that a particular activity may subject it to the jurisdiction of the foreign state. See Madara v. Hall, 916 F.2d 1510, 1516 (11th Cir. 1990). "Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." Madara, 916 F. 2d at 1516 (emphasis in original); McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 201 (1957).

   *1.   Relatedness*

First, Plaintiff must show that Plaintiff's claims against Dr. Exarhos "arise out of or relate to' Dr. Exarhos's contacts with Georgia. McGow, 412 F.3d at 1214; Oldfield v. Pueblo De Bahia Lora, SA, ____ F.3d ____, No. 07-11958, 2009 WL 331002 (11th Cir. Feb. 12, 2009) (holding that the exercise of jurisdiction over nonresident defendant did not satisfy due process because defendant's internet contacts with forum were not related to plaintiff's cause of action). These contacts must be based on the acts of Dr. Exarhos himself; the unilateral acts of a third party are insufficient to allow a Court to exercise personal jurisdiction over him. See Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 109, 107 S. Ct. 1026, 1030 (1987); Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40 (1958).

9

Dr. Exarhos's only contacts with Georgia are a single 2003 visit to a doctor's office to conduct a training and one or two related phone calls. Neither the business trip nor the phone calls, however, are related to or give rise to Plaintiff's False Advertising claim or the related state law claims. Plaintiff contends that this business trip is related to its claims because Dr. Exarhos was given the opportunity to train doctors on the DRX 9000 because he gathered the patient data, which Drs. Groteke and Gionis later incorporated into the articles at issue. Any nexus between this trip and the alleged tortious acts related to the publication of the articles claiming that the DRX is 86% effective do not satisfy the relatedness requirement of jurisdictional due process. See Oldfield, ___ F.3d ___, 2009 WL 331002. Accordingly, Plaintiff has not established that Dr. Exarhos's actual contacts with Georgia arise out of or relate to Plaintiff's allegations against him. Plaintiff offered no evidence that Dr. Exarhos participated in either the marketing campaign in Georgia or creating the medical journal articles of which Plaintiff complains.

### 2. *Purposeful availment*

In addition, Plaintiff must show that Dr. Exarhos purposefully availed himself of the privileges of conducting activities in Georgia, "thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471

U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985); McGow, 412 F.3d at 1214. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." Burger King, 471 U.S. at 475, 105 S. Ct. at 2183 (internal citations and quotations omitted); Madara, 916 F.2d at 1516.

Plaintiff has not met its burden of showing a purposeful act on the part of Dr. Exarhos that would allow this Court to exercise specific jurisdiction over him. The only activities of Dr. Exarhos related to Plaintiff's claim involve his role in gathering the patient data at his medical practice in Florida - other individuals analyzed and incorporated this data into the articles claiming that the DRX 9000 was 86% effective. By collecting patient data, Dr. Exarhos did not purposefully avail himself of the privileges of conducting activities in Georgia. Moreover, Dr. Exarhos may not be haled into court in Georgia as the result of the unilateral actions of Axiom and Drs. Groteke and Gionis in publishing these articles and using the 86% figure in advertisements for the DRX 9000. See Burger King, 471 U.S. at 475, 105 S. Ct. at 2183.

Finally, the fact that Dr. Exarhos potentially could have foreseen that the studies and advertisements would find their way into Georgia, and that these articles were based on the data he collected, is insufficient to satisfy

11

constitutional due process. See generally World-Wide Volkswagen Corp v. Woodson, 444 U.S. 286, 295-296, 100 S. Ct. 559, 566 (1980) ("[F]orseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."). In short, Dr. Exarhos did not "purposefully" establish the necessary minimum contacts with Georgia such that he could reasonable anticipate being haled into Court here, as required by the Due Process Clause.

### 3. *The Calder effects test*

Although not addressed by either party, the "effects test" developed in Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482 (1984), indicates when such activities may subject one to another forum's jurisdiction. The effects of one's activities may establish the minimal contacts with a forum state when the nonresident defendant commits an intentional tort outside the forum. See Licciardello v. Lovelady, 544 F.3d 1280, 1284 (11th Cir. 2008); Rhodes v. Unisys Corp., 170 F. App'x 681, 684 (11th Cir. 2006); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259-60 (3rd Cir. 1998). In Calder, the Supreme Court held that a California court could exercise personal jurisdiction over Florida residents, who wrote and edited a libelous article circulated in California, if the Florida residents expressly aimed the article at the plaintiff in California knowing that the article would be published in California and

12

would impact plaintiff's reputation there. <u>Calder</u>, 465 U.S. at 789-90, 104 S. Ct. at 1482. The Florida residents also knew that the "brunt of the harm" would be felt by plaintiff in California. <u>Id.</u>

In order to establish personal jurisdiction under <u>Calder</u>, Plaintiff must show that Dr. Exarhos committed an intentional tort, that he "expressly aimed" this tort at Plaintiff in Georgia, and the effects of the tort were suffered in Georgia. See <u>Licciardello</u>, 544 F.3d at 1287-88 (holding that the <u>Calder</u> effects test was satisfied in a trademark action because the infringing conduct was "expressly aimed" at a specific individual in the forum and the effects of the act were suffered in the forum). The activities in <u>Calder</u> amounted to the Defendant purposefully availing itself of the privilege of conducting activities in the forum.

Put simply, Plaintiff has not presented any evidence that Dr. Exarhos's actions in gathering the data in Florida were "expressly aimed" at Plaintiff in Georgia, as required under <u>Calder</u>. Although Dr. Exarhos might have known or foreseen at the time he gathered the patient data that Axiom would use this data to demonstrate the effectiveness of the DRX 9000, unlike <u>Calder</u>, no evidence indicates that he knew the data he collected would be used to cause injury to Plaintiff in Georgia. See <u>Calder</u>, 465 U.S. at 791, 104 S. Ct. 1488. To satisfy <u>Calder</u> Plaintiff must show something more than that it suffered a

financial loss in at its principal place of business in Georgia as a result of Dr. Exarhos's activities in Florida. See generally IMO Indus., 155 F.3d at 262-65. Thus, Plaintiff has not satisfied its burden of establishing personal jurisdiction over Dr. Exarhos, and the Court **GRANTS** Defendant's motion to dismiss [# 459].

## III. Conclusion

The Court **GRANTS** Defendant Timothy Exarhos's motion to dismiss [# 459]. The Court **DIRECTS** the Clerk to **DISMISS** Defendant Timothy Exarhos as a defendant to this case.

**SO ORDERED**, this  9th  day of April, 2009.

JACK T. CAMP
UNITED STATES DISTRICT JUDGE